GEORGE THOMPSON, JR., V. THE STATE.

No. 16051. Delivered November 1, 1933.
Reported in 64 S. W. (2d) 977.

The opinion states the case.

*Collins, Jackson & Snodgrass,* of San Angelo, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for wife desertion; punishment, six months in the county jail, and a fine of $500.00.

Appellant, a twenty-year-old boy, married a sixteen-year-old girl. Neither of them had any money or other property. He was living with his father on a ranch at the time, and she with her father and mother on a farm. The couple were accompanied to Carlsbad, New Mexico, where the marriage took place, by the Bedells,—a sister and brother-in-law of the bride. The girl's mother, Mrs. Brown, was at the Bedells when the party left, and was apparently willing for the marriage to take place. Two days later appellant brought his wife to Mrs. Bedell's home and told them that his father was very angry because of the marriage, and he, appellant, did not know what to do, as he was broke and had no job and was afraid to take his wife back to his father's house. Bedell lent appellant two dollars, and the latter said he would go back home and work for his father a few days and try to get him in a good humor, and that in four or five days he would be back. This was the last time witness Bedell had seen appellant. Bedell testified that both appellant's wife and her mother stayed at his home about three weeks, and then both went back to the home of Mrs. Brown and her husband where the young wife had lived before her marriage, and where she continued to live up to the time of this trial. Mrs. Bedell swore that she went to Carlsbad with her sister, at the time they married; that appellant brought her sister to the Bedell home two nights later and said his father was mad at him, and that he wanted to leave his wife at the Bedell home until his father got in a good humor, and then he would come for her or write, but he had neither come nor written. After three weeks her sister went with her mother to the home of the latter. She further said that when appellant brought his wife to her house that he had no money, no job and no place to take his wife. She testified that appellant had been living at his father's house. She further said "I think Ruby was going to stay there with me until he got to make some arrangements for some place to take her. Yes, that was satisfactory with my husband and I and it was satisfactory with Ruby." Mrs. Brown, mother of Ruby, testified that when appellant and her daughter came to the Bedell home after their marriage, appellant said he wanted to leave her there for a few days until he could go home and get his father in a good humor,

.and get some money and come back after her. He said he was coming back after her, and if he could not get money any other way, he would steal it, and then they would go back. She further testified:

"Yes, Ruby asked Mr. Bedell when she came in if it would be all right for her to stay there a little while. He said that it would. She said that she wanted to stay there until George could get some place to take her, and Mr. Bedell said that it would be all right."

The young wife testified to the marriage, and that her husband left her at her sister's home, and that he had not come to see her or sent for her or sent her any money since. She testified she went over to his father's ranch once to see him but did not find him. In her own language to him later "They ran her off." She did, however, see him in town one time and he told her that "His daddy wouldn't let him live with me," and he gave her no money. He said to her that he could not help her,—that his daddy would not give him any money and would not let him live with her. She further testified:

"Yes, I asked my sister if I could stay with her until he tried to make some arrangements so I could go with him and she said it would be all right with her, and that is what we decided to do. Yes, George was living with his father. I guess he has been all along. I don't know what he has been doing on the ranch for his father. No I don't know that he hadn't been drawing wages until he married. I guess his spending money was what his father would give him to spend."

. We do not feel justified in holding that there is any evidence in this record showing that appellant's failure to live with or support his wife was willful. He was a boy, dependent on his father when he married, had no money and no independent job, and no home to take his wife to. She was a girl, apparently without resource or means of livelihood, who had been sheltered and cared for in the home of her father and mother. She significantly stated that when she married she was unable to work. We judicially know what every one knows, that these be times when jobs are scarcer than the proverbial hen's teeth, and that a man without knowledge or skill or pull has an almost hopeless task in seeking work. Fortunately for these two, the wife had her father's home and appellant his father's to which each could go and wait for better days. From the standpoint of food, raiment and shelter, neither was worse off after the ceremony was performed. That appellant wanted to take his wife to his father's home and keep her there and live with her, is evident from

the record.  He avowed his willingness to steal if needs be to take care of her.  He told her after the marriage and temporary separation that his father still entertained the same unkind feeling toward her, and that he had no money to give her, and no place to take her to.  We fail to find testimony of that wilful desertion, that unwillingness to live with and care for which should appear in any case before the conduct of the man is held penal.  · It occurs to us that this law was not made for cases like this, and that it would have been infinitely better for the young wife to have stayed where she was loved and cared for, and he where he was in the same situation, until some of the financial clouds broke away and until there could come a time when instead of writing him a threatening letter she could have sent him a suggestion that "Somewhere in the West; We'll build a little nest,—and let the rest of the world go by."  We think the case should be reversed for lack of testimony, and it is so ordered.  See Otto v. State, 266 S. W., 787; Ellis v. State, 276 S. W., 703; Elms v. State, 270 S. W., 856; Davis v. State, 16 S. W. (2d) 827.

*Reversed and remanded.*